UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 22-20300-CR-MARTINEZ

UNITED STATES OF AMERICA

Plaintiff,

vs.

ARMANDO ANTONIO
SUMOZA-PADRON,

Defendant.

_____/

## DEFENDANT'S OBJECTION TO PRESENTENCE INVESTIGATION REPORT AND MOTION FOR DOWNWARD VARIANCE

The Defendant, Armando Antonio Sumoza-Padron, through undersigned counsel and pursuant to U.S.S.G. Section 3B1.2 and 18 U.S.C. Section 3553(a), respectfully files this Objection to the Presentence Investigation Report ("PSR") and Motion for Downward Variance.  In support of this filing, Mr. Sumoza-Padron states as follows:

### FACTUAL AND PROCEDURAL HISTORY

Mr. Sumoza-Padron is a 49 year old Venezuelan national who was born on February 3, 1973 in Cumanacoa, Venezuela. PSR ¶38.  His mother left the home when he was 7 years old, and he was thereafter raised by his aunt and uncle. *Id.* at ¶ 40. They lived under very poor conditions, and Mr. Sumoza-Padron began working at age 9 to assist providing for his family, as his aunt and uncle required assistance on the family farm.   PSR ¶41.  Consequently, he did not attend school until he was 14 years old, which was a struggle for him as he was so behind.  The highest level of

1

education he completed was the sixth grade.  He cannot read or write in the Spanish language, but he can print his name.  PSR ¶53.

Throughout his adult life, Mr.  Sumoza-Padron has been employed as a mason and a cook. PSR ¶56.  His meager income in these lines of work creates a constant struggle to support himself and his family financially.  Mr. Sumoza-Padron's difficult financial circumstances formed the backdrop for his involvement in the present case. Indeed, the man who recruited Mr. Sumoza-Padron to do the drug trip in this case promised him that he would be paid $20,000 – an unimaginable sum of money that could help feed and house Mr. Sumoza-Padron's family for years.

Mr. Sumoza-Padron did not know the total quantity of cocaine that he was supposed to  transport; he had no ownership stake in the cocaine; nor was he involved in the organization or planning of the operation.  He was simply to be a crewmember aboard a boat who would assist others higher up in the organization in the pick-up and transportation of the drugs.  Much like a drug courier who flies from Point A to Point B with drugs hidden in a suitcase, Mr. Sumoza-Padron was a minor participant who was less culpable than most other participants in this drug trafficking conspiracy.

2

## GUIDELINE CALCULATIONS WITHOUT MINOR ROLE

Because Mr. Sumoza-Padron was involved in a cocaine trafficking conspiracy that involved more than 450 kilograms of cocaine, his base offense level under the advisory guidelines is 38.  PSR ¶21.  Mr. Sumoza-Padron anticipates that this base offense level will be reduced by 2 levels as a result of his qualification for the "safety valve" provision, resulting in an adjusted offense level of 36. With a three-level reduction for acceptance of responsibility, it is anticipated that his total offense level will be 33.  Mr. Sumoza-Padron has no prior arrests, convictions, or contacts with law enforcement and, as such, is in a criminal history category I.  PSR ¶33.  With a total offense level of 33 and a criminal history category I, Mr. Sumoza-Padron's advisory guideline imprisonment range will be 135 to 168 months (11.25 to 14 years).  Mr. Sumoza-Padron respectfully asserts that a sentence of imprisonment within this range would be unreasonable in this case, and far greater than necessary to achieve the purposes of 18 U.S.C. Section 3553(a).

## MINOR ROLE GUIDELINE OBJECTION

In the Presentence Investigation Report, Mr. Sumoza-Padron is not given any reduction for his limited role in the offense.  PSR ¶16.  He objects to not receiving, pursuant to U.S.S.G. Section 3B1.2(b), a two-level minor role reduction.  United States Sentencing Guideline Section 3B1.2(b) provides for a two-level reduction if "the defendant was a minor participant in any criminal activity."  The determination as to whether a defendant should receive a role reduction is a fact-based determination and is "heavily dependent on the facts of the particular case."  *See* U.S.S.G. Section

3

3B1.2 App. N. 3(C).  The application notes provide that a minor participant "applies to a defendant . . . who is less culpable than most other participants, but whose role would not be described as minimal."  *See* U.S.S.G. Section 3B1.2 App. N. 5.

USSG §3B1.2 governs the application of role adjustments. As the Court is aware, the Sentencing Commission substantially amended the mitigating role section of the sentencing guidelines in 2015.  In adopting the changes, the Commission stated that it had "conducted a review of cases involving low-level offenders, analyzed case law, and considered public comment and testimony."[1]  The Commission's "study found that mitigating role [was being] applied inconsistently and more *sparingly* than the Commission intended."[2] A number of the Commission's amendments to the guideline appear to have been specifically targeted to benefit simple drug couriers and transporters. Prior to the 2015 amendment, the sentencing guidelines stated that

> a defendant who is convicted of a drug trafficking offense, whose role in that offense was limited to transporting … drugs and who is accountable … only for the quantity of drugs the defendant personally transported … *is not precluded* from consideration for an adjustment under this guideline.

USSG §3B1.2 Application note 3(A). When it amended the sentencing guidelines, the Commission noted that the double-negative tone ("not precluded") "may have had the unintended effect of discouraging courts from applying the mitigating role adjustment in otherwise appropriate circumstances." *Id.* In an effort to correct this unintended effect, the Commission amended the application note to state that

---

[1] *Amendments to the Sentencing Guidelines* (April 30, 2015), *available at* http://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/20150430_RF_Amendments.pdf.
[2] *Id.* (emphasis added).

> a defendant who is convicted of a drug trafficking offense, whose participation in that offense **was limited to transporting** or storing drugs and **who is accountable under §1B1.3 only for the quantity of drugs the defendant personally transported** or stored **may receive** an adjustment under this guideline. (emphasis added).

The intent of the Commission in making this change was to prevent courts from being "discouraged" from applying a role reduction for transporters such as Mr. Sumoza-Padron whose role was "limited to transporting … drugs" and who are held accountable only for the quantity of drugs they transport.

In determining whether to apply a mitigating role adjustment, the Guidelines direct the District Court to consider a list of non-exhaustive factors:

> (i)     the degree to which the defendant understood the scope and structure of the criminal activity;
>
> (ii)     the degree to which the defendant participated in planning or organizing the criminal activity;
>
> (iii)     the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
>
> (iv)     the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;
>
> (v)     the degree to which the defendant stood to benefit from the criminal activity.

The guidelines go on to state that a *defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks **should be considered for an adjustment under this guideline.*** (emphasis added).

Mr. Sumoza-Padron is a courier whose conduct and characteristics fit squarely within the guidelines admonition, in comparison to both indicted and unindicted co-

conspirators. *See United States v. Rodriguez De Varon,* 175 F.3d 930 (11th Cir. 1999) (en banc) (holding the court must measure the defendant's role against the relevant conduct he is held accountable for, as well as other discernable participants in the relevant conduct). Mr. Sumoza-Padron had no decision-making power in this venture, as his job was simply to take the narcotics from point A to point B.  He had no ownership interest in the drugs. While a huge sum to Mr. Sumoza-Padron, he was promised to be paid a very modest amount in comparison with the actual street value of the drugs.  Based on his strictly circumscribed role in this offense, Mr. Sumoza-Padron respectfully requests that this Court grant him a two-level downward adjustment pursuant to USSG § 3B1.2(b) due to his minor role.

In drug cases such as the present one, a role reduction is especially important because it is directly tied to the base offense level determination under U.S.S.G. §2D1.1. Specifically, §2D1.1(a)(5) provides that "if (A) the defendant receives an adjustment under §3B1.2 (Mitigating Role); and (B) the base offense level . . . is (i) 32, decrease by 2 levels; (ii) level 34 or level 36, decrease by 3 levels; or (iii) level 38, decrease by 4 levels." Additionally, the Application Notes to §3B1.2 provide that in drug cases where a defendant's base offense level is determined pursuant to §2D1.1(a)(5), the Court shall additionally reduce that base offense level based on the defendant's mitigating role.  *See* U.S.S.G. §3B1.2 App. N. 6.  In this case, should the Court grant a minor role reduction to Mr. Sumoza-Padron, the low end of his advisory guideline range would decrease from 135 to 70 months.  The full calculation is set forth below:

Base offense level 38

- 4 pursuant to USSG §2D1.1(a)(5)(iii) (which provides for a decrease of 4 levels for anyone who receives a mitigating role adjustment and where the starting offense is 38)
- 3 for acceptance of responsibility, USSG §3E1.1
- 2 for safety valve pursuant to USSG §2D1.1(b)(18)
- 2 for minor role pursuant to USSG § 3B1.2 App. N. 6.

Adjusted offense level 27, yielding an advisory range of 70 to 87 months

When evaluating whether a minor role is appropriate, the Court can look at others involved in this scheme, including: (1) the recruiters; (2) those persons with a financial stake in the narcotics (3) the owners of the vessel(s); (4) the organizers of the multiple transportations that make it possible for the cocaine to reach the port and be loaded onto a vessel; (6) those on land directing the eventual receipt; and (7) those responsible for the ultimate distribution of the drugs. Operations such as this require many moving parts. Mr. Sumoza-Padron's role as a crewmember of a boat may have been an essential part of the scheme, but the Sentencing Commission reminds courts that *essential* does not equal *undeserving* of a minor role adjustment.

Undersigned counsel has conferred with Assistant United States Attorney Yvonne Rodriguez-Schack regarding the minor role reduction sought in this case. Ms. Rodriguez-Schack indicated that the Government opposes the request for a minor role reduction.

**MOTION FOR DOWNWARD VARIANCE**

Should the Court find that Mr. Sumoza-Padron does not qualify for a minor role reduction, he respectfully requests that the Court nevertheless grant him a

7

downward variance to 70 months imprisonment. Mr. Sumoza-Padron respectfully asserts that such a sentence would achieve the purposes set forth in 18 U.S.C. Section 3553(a). In fact, 70 months away from his family with no hope of a visit from them would be an extremely long sentence and an extremely severe punishment for Mr. Sumoza-Padron.

### THE NATURE AND CIRCUMSTANCES OF THE OFFENSE

Mr. Sumoza-Padron acknowledges that the offense in this case is serious. Mr. Sumoza-Padron asks this Court to take into consideration, however, that he is a first time offender and was not the owner of the drugs in this case.

### THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT

As noted above, Mr. Sumoza-Padron is 49 years old and was born in Cumanacoa, Venezuela. He has worked since he was nine years old to help support his family. His financial desperation led him to make a tragic mistake that has caused him separation from his family with no hope of seeing them until he is released and deported back home. That his incarceration has been during the COVID-19 pandemic has made his imprisonment and his separation from his family that much harder.

### DETERRENCE, RESPECT FOR THE LAW, AND JUST PUNISHMENT

A 70 month sentence would provide adequate deterrence for the offense in this case. Arguably, the five months that Mr. Sumoza-Padron has already spent at the Federal Detention Center, away from his family and during the pandemic, is sufficient to deter him from ever doing anything like this again, and he will likely never return to the United States after he is deported back to Venezuela. For someone

in Mr. Sumoza-Padron's position, being so far from home, 70 months in prison is a very long time. Such a sentence will promote respect for the law and provide just punishment.

**THE NEED TO AVOID UNWARRANTED SENTENCE DISPARATIES**

A sentence of 70 months would avoid unwarranted sentence disparity, as required by Section 3553(a). Undersigned counsel has reviewed similar cases in this district from the past few years, which revealed that courts in this district have granted downward variances to defendants who are similar to Mr. Sumoza-Padron and have facts comparable to the instant case:

- 17-CR-20604-CMA – On January 17, 2020, Defendant Alex Duvan Salazar Villareal was sentenced to 84 months as a co-conspirator who helped to relay information regarding multiple international boat deliveries of cocaine. He was held responsible for 1,553 kilograms of cocaine.

- 19-CR-20153-RKA – On August 23, 2019, Defendant Jose Vicente Saltizabal Madrid was sentenced to 96 months as captain of a semi-submersible vessel carrying 2,742 kilograms of cocaine.

- 19-CR-20716-CMA – On April 21, 2020, defendant Jonathan Santana Romero (and the other crewmember in the case) were sentenced to 70 months as a crewmember on a boat with 340 kilograms of cocaine.

- 19-CR-20715-KMW – On June 30, 2020, Defendant Willams Obando Barrantes was sentenced to 63 months as the captain on a boat with 50 kilograms of cocaine and 1,600 pounds of marijuana, the other two crewmembers received 51 and 48 months respectively.

- 19-CR-20490-FAM – On November 26, 2019, Defendant Bryan Argentis Franco Reyes was sentenced to 108 months for a case involving 4,359 kilograms – captain not identified.

- 19-CR-20404-KMW – On January 22, 2020, defendant Miguel Bailon Moreira (and the other two crewmembers) were sentenced to 52

months as a crewmember on a boat with at least 400 kilograms of cocaine,

- 19-20845-RAR – On June 23, 2020, Defendant Jaime Escobar Meza was sentenced to 108 months as a captain of a boat with 1,420 kilograms (the other two crew members also received 108 months).

- 20-CR-20167-KMW – On November 23, 2020, Defendant Julio Sandi Alvarez sentenced to 70 months as the captain of a boat with 297 kilograms of cocaine and 850 pounds of marijuana, the other crew member received a sentence of 63 months.

- 20-CR-20168-CMA – On January 27, 2021, defendant Jimmy Sanchez Loor was sentenced to 84 months as a crewmember on a boat with 632 kilograms of cocaine; the other crewmember on the ship also received 84 months.

- 20-CR-20167-KMW – On November 23, 2020, defendant Julio Sandi Alvarez sentenced to 70 months as the captain of a boat with 297 kilograms of cocaine and 850 pounds of marijuana, the other crew member received a sentence of 63 months.

Undersigned counsel has conferred with Assistant United States Attorney Yvonne Rodriguez-Schack regarding the Government's position on this motion. Ms. Rodriguez-Schack indicated that the Government opposes the request for a downward variance.

WHEREFORE, Mr. Sumoza-Padron asks this Court to grant the above-noted objection or grant the downward variance request and sentence him to 70 months. Such a sentence would comport with the mandates of 18 U.S.C. §3553(a) and the requirement that a sentence imposed avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

Respectfully submitted,

**MICHAEL CARUSO**
**FEDERAL PUBLIC DEFENDER**

By:     */s/ Helaine B. Batoff*
Assistant Federal Public Defender
Florida Bar No.: 0418617
150 W. Flagler Street, Suite 1700
Miami, Florida 33130-1556
Tel: (305) 530-7000
Fax: (305) 536-4559
E-mail: helaine_batoff@fd.org

## CERTIFICATE OF SERVICE

I HEREBY certify that on November 21, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Helaine B. Batoff*

11